CLINTON *v.* CLINTON'S ESTATE.

1. HUSBAND AND WIFE — SEPARATION — AGREEMENT — CONSTRUCTION.

By a separation agreement under seal dated in November, 1886, a husband conveyed their home to his wife for life, remainder to himself and children, and agreed to pay a mortgage thereon within two years, and that if, in the "meantime," she should make, or procure to be made, any payments of principal or interest thereon, she or the person making the payments should be subrogated to the rights of the mortgagee, or have a lien corresponding to the amount so paid, as security, and to assure the final payment of said principal and interest in full "by the party of the first part." *Held,* that the agreement created a personal obligation on the husband's part to pay the mortgage, which matured at the expiration of two years without payment.

2. LIMITATION OF ACTIONS—CONTRACT UNDER SEAL.

Under section 9734, 3 Comp. Laws, an action on the personal obligation of a husband, created by contract under seal, to pay a mortgage on certain land conveyed to his wife, is barred 10 years from the time the payment was agreed to be made.

3. SAME—MORTGAGE—PERSONAL OBLIGATION.

Action on the personal obligation created by a mortgage on real estate is barred in 10 years. (Section 9734, 3 Comp. Laws.)

4. SAME—PAYMENTS TOLLING STATUTE—PAYMENT BY JOINT OBLIGEE.

A husband and wife gave a mortgage on their home by which they both expressly agreed to pay the debt, and afterwards the husband conveyed the premises to the wife for life by a separation agreement, by which he agreed to pay the mortgage within two years, and agreed that if in the "meantime" she should pay it she should be subrogated to the rights of the mortgagee to assure payment by the husband. *Held,* that an action against the husband accrued at the expiration of the two years without payment, and that the statute of limitations was not tolled by payments subsequently made by the wife.

5. HUSBAND AND WIFE — SEPARATION — AGREEMENT — CONSTRUC-
TION.

 The separation agreement did not create a personal liability to
 reimburse the wife for her payments on the mortgage.

Error to Livingston; Smith, J. Submitted April 17,
1907. (Docket No. 43.) Decided May 18, 1907.

Jane Clinton presented a claim against the estate of
George Clinton, deceased, for the amount of a mortgage
discharged by claimant. The claim was disallowed by
the commissioners, and claimant appealed to the circuit
court. There was judgment for claimant on a verdict
directed by the court, and defendant brings error. Re-
versed.

*E. A. Stowe,* for appellant.

*Shields & Shields,* for appellee.

HOOKER, J. George and Jane Clinton being husband
and wife, the latter filed a bill for divorce, in the course
of which proceeding they made a written agreement relat-
ing to their property rights. He conveyed to her the
home for her life, to be held by her for the use and bene-
fit of herself and their children as a home. He reserved
a life estate in himself in the event of his surviving his
wife, with remainder to the children after the termination
of the life estates, unless he should survive all, when the
fee would revert to him. There was a mortgage upon
the premises at the time, and he agreed that he would
pay it within two years, and have the premises discharged
from it, the amount of the mortgage being $225 and inter-
est, and if, *in the "meantime,"* Jane should make any
payments of principal or interest thereon, or procure any
other person to do so, she or such other person should be
subrogated to the right of the mortgagee, or have a lien
corresponding to the amount so paid, as security, and to
assure the final payment of said principal and interest in
full "by the party of the first part." The mortgage and

note were dated June 21, 1882, and matured in three years, and were therefore due at the time the agreement aforesaid was made, which was November 30, 1886. George Clinton never made any payments upon the mortgage. This mortgage was assigned to William H. Withington. The date of this assignment does not appear, but the record shows that Mrs. Clinton made payments to Withington upon the mortgage as follows: April 17, 1899, $12, November 9, 1899, $12, a number of small payments aggregating $243. Withington's executors assigned the mortgage to the claimant, Mrs. Clinton, on June 11, 1904. She had not fully paid the mortgage, but it was given to her by Mrs. Withington after her husband's death. She had lived in their family for some years.

George Clinton is said to have died on October 15, 1904. Thereupon Mrs. Clinton filed this claim against his estate to obtain reimbursement for the amount of the mortgage and interest, or at least the amount of her payments. The claim was disallowed by the commissioners on claims, but on appeal it was allowed by direction of the circuit judge, the jury finding the sum of $267 for money paid by the claimant and $94.15 for interest, a total of $361.15. The court had previously overruled a motion to direct a verdict for the defendant based upon the claim that, while the claimant's testimony showed she paid money to Withington, such payments were not shown to have been made upon the mortgage in furtherance of any understanding with Withington, but only that she expected that it was so paid, and therefore did not establish her claim under the provisions of the agreement, and, further, that the statute of limitations (3 Comp. Laws, § 9375) is a bar to this claim. It is contended (1) that the agreement did not create a personal liability on the part of the deceased to pay this mortgage; (2) that by its terms the right to subrogation depended upon payment made by complainant within two years after the date of the agreement; (3) that, if there were ever a valid claim in personam, it is barred by the statute of limitations.

The deceased made an agreement to pay this mortgage within two years. This created a personal obligation, which matured at the expiration of two years without payment. A right of action accrued then.

Had there been no such promise, there was still the obligation to pay the mortgage, and any party in interest might pay it, and be subrogated to the rights of the mortgagee. The mortgage was executed by both George and Jane Clinton, contained an express promise to pay $225 and interest, and was under seal, as also was the separation agreement. Therefore the statute had not run until 10 years had expired. See 3 Comp. Laws, § 9734, and note. The mortgage was dated in June, 1882, payable in three years, the separation agreement in November, 1886. George Clinton died October 15, 1904. The personal obligation under the mortgage became barred in June, 1895, that under the separation contract in November, 1898, unless the running of the statute was arrested, and there is no evidence that it was arrested by any act of the deceased.

It is contended that payments made by Mrs. Clinton had the effect of extending the statutory period, she being a joint promisor in the mortgage, but this is ruled otherwise in the case of *Home Life-Ins. Co.* v. *Elwell*, 111 Mich. 689, and cases cited.

It is said in the appellee's brief that the right of action did not accrue until after the payment of the mortgage by claimant. We have already said, and it can hardly be questioned, that the right of action for the breach of this contract accrued at the expiration of two years, when the breach occurred. What other promise was there made in that contract? None except that, if she should choose to pay within the two years, she might have a lien on the land, for the payments, by way of subrogation, which she would have had without such provision if she chose to take an assignment of the mortgage, and perhaps without it. But that does not justify the treatment of such a payment as creating a personal obligation to pay such

sums from other property on which a personal action will lie. If the separation agreement *could* be construed as a promise to repay her for all payments that she might afterwards make on the mortgage, that contract (being under seal) would be barred by the statute in 1898 at the farthest. Payments made after that time would not only be made on a mortgage, whose personal obligation was barred, under section 9734, but under a contract whose vitality came to an end under the same statute in November 30, 1896, if it be said that a right of action accrued immediately upon such payment and on November 30, 1898, if the expiration of the two years mentioned in the contract was essential to the accruing of such right of action, and the record shows that but $8 was paid within the latter period, and we should still be compelled to reverse the order for the reason that it was error to refuse to direct a verdict for that amount. But we think that the contract did not create a personal liability to reimburse claimant for such payments as already stated, and therefore the entire claim was barred. We are constrained to say, therefore, that the statute is a bar to the personal claim of the claimant.

What her rights may be as to foreclosure of the mortgage, under the doctrine of subrogation, need not be considered, as they are not before us.

The order is reversed, and a new trial is ordered.

McAlvay, C. J., and Montgomery, Ostrander, and Moore, JJ., concurred.